GEORGE W. HENDEE, GUARDIAN OF F. E. AND G. B. FOSS, *v.* P. C. CLEAVELAND.

*Guardian cannot Deal with Himself.    Interest.    Mandamus. Probate Court.*

1. A guardian cannot deal with himself ; cannot be at once vendor and vendee ; hence, when he sells his own property to his ward, the ward can ignore the sale and recover the price; and this rule is not affected by the good faith of the guardian.

2. Also, the interest on money invested in real estate *without a license from the* Probate Court, though it sold for the same that was paid for it, and was occupied by the wards and their mother.

3. And any action of the Probate Court, *two years after such sale*, by way of con-

firmation, or legalizing such investment of the wards' funds, is no protection to the guardian.

4. Mandamus is a proper remedy to correct the records of the Probate Court in accordance with the facts.

APPEAL, from the Probate Court for the District of Lamoille, as to the amount due from the defendant, as former guardian of the said F. E. and G. B. Foss. The Probate Court found due the sum of $8081.31; and the County Court, April Term, 1881, POWERS, J., presiding, affirmed *pro forma*, the decree of that court. The case was heard on the following agreed statement of facts :

In finding that amount due, the Probate Court charged the defendant the sum of $3200 which defendant had invested as guardian of said children in real estate by purchasing of E. B. Sawyer, guardian of his minor children, a lot in Hyde Park village for the sum of $750, and moving on to it a building belonging to himself, which was a store-house, and which he afterwards converted into a dwelling-house. After said building was moved on to said lot, a distance of fifty or more rods, it was worth from $300 to $500. The full cost of lot and building, when finished, was $3000.

Afterwards defendant as guardian, having consulted S. S. Pike, then Register of Probate, and under his approval, built a barn on said premises, costing the sum of $200, and making in all the sum of $3200 invested in said premises. Other items are also charged as repairs and expenses.

Defendant claims that he should have credit for this $3200 and other items at the time money was invested and expended, and that the real estate now belongs to said Flora E. and Geo. B. Foss.

Plaintiff claims that defendant had no right to invest said $3000 in real estate, and that if so, he had no right to build the barn and make repairs. Consequently he is liable for said $3200 and interest, and other items.

The facts are, that the defendant made said investment on or about the 15th day of December, A. D. 1873. Before the deed was given, S. S. Pike of Johnson, then Register of Probate, by request of the defendant, came up, examined the property, and approved of said investment.

At that time defendant had not in any way received or secured any order or license from the Probate Court authorizing him to invest the funds of his wards, or either of them, in the real estate in question, or any other real estate ; nor had defendant at that

time made any application for such order or license, except as above stated. Some time after, and in 1876, defendant made application in writing to said Probate Court to invest funds of his wards in real estate, as set forth in the publication of notice hereto attached. At the time of the hearing, as appointed in said notice, to wit: March 10th, 1876, defendant and his attorney, George L. Waterman, Esq., appeared before said court. After consideration, said Probate Court authorized the investment of his said wards' personal funds in said real estate at the price above named, as asked for ; and so far as it could legally be done, ratified and confirmed the purchase of said real estate by defendant ; and in a subsequent settlement of defendant's account by the Probate Court, said sum of $3200 purchase-money, and repairs, expenses, and other items, such as taxes, rents, and repairs were allowed.

Of the authorization, or ratification, of said purchase by the Probate Court, as aforsaid, and of the application for the same, and of the hearing, there is no record in the probate office, nor has there ever been.

Now plaintiff submits that the authorization, or ratification, aforesaid cannot be proved by parol, as it is, or should be, a matter of record, and can be proved only by the record ; but if the court is of the opinion that the facts as to said proceedings authorizing or ratifying said purchase as aforesaid are sufficient to warrant the issuing of a writ of mandamus to correct or perfect the records of the Probate Court, if the proper remedy, or if said records may be reformed or corrected by any resort to the courts whatsoever, then it is agreed that said records may be corrected or perfected in accordance with the facts before stated, and may be treated for the purposes of this hearing as already corrected, and that the question as to whether the defendant shall account for said $3200 and interest shall be determined the same as though the probate records showed the authorization or ratification as before set forth. S. S. Pike, who acted as Register of the Probate Court, has been dead near three years.

In arriving at said sum of $8081.31 as the amount due, the Probate Court charges the defendant the sum of $532.93, interest on the sum of $1400, which the defendant invested in real estate as such guardian, and afterwards sold at same sum. The amount charged is the interest from day of purchase to date of sale. Defendant accounts for no rent, and claims he should not, because his wards and their mother occupied the premises during this period ; the children were then quite small. During this time the defendant charged and has been allowed a reasonable sum for the

board and care of his wards. Defendant never applied for or had any license or order of the Probate Court to purchase said real estate. Defendant claims, and did before the Probate Court, that if interest is allowed on said investment, he should be allowed rent for the use and occupation of said premises during said time.

The finding of the Probate Court, and hearing, was the final hearing under s. 52, c. 72, of the Gen. Sts.

The probate records of the district of Lamoille are referred to and made a part of the case, and also the land records of the town of Hyde Park.

The present value of said premises, for which defendant claims to be allowed $3200, is about the sum of $1500.

ORDER OF NOTICE.

FLORA AND GEORGE B. FOSS, (Minors.)

STATE OF VERMONT, } In Probate Court, held at Johnson, within District of Lamoille, ss. } and for said District, on the 22d day of Feb., A. D. 1876.

P. C. Cleaveland, guardian of Flora and George B. Foss, minors, makes application to said court for permission to dispose of the personal estate of his wards and invest the proceeds thereof in real estate representing to this court that such investment would be beneficial to the interest of said wards and all persons concerned therein.

Whereupon, it is ordered by said court, that said application be referred for hearing to a session of said court to be held at the probate office, in said Johnson, on the 10th day of March, A. D. 1876, for hearing and decision thereon; and, it is further ordered, that all persons interested hereof, by publication of notice of said application and order thereon, three weeks successively in the " Lamoille Newsdealer," printed at Hyde Park, before said time of hearing, that they may appear at said time and place, and, if they see cause, object thereto.

By the court.—Attest, S. S. PIKE, Register.

*Brigham & Waterman,* for the defendant.

The Probate Court by order or decree may authorize, upon proper notice, the guardian to invest the personal funds of his ward in real estate. R. L. ss. 2464, 2465. A decree of such court, acting within the sphere of its jurisdiction is conclusive. 1 D. Chip. 420; 24 Vt. 42. Their proceedings are *in rem.* 9 Vt. 41. A decree having been made in this case, but there being no record of the same, mandamus is the proper remedy to correct the error; and it is adequate for that purpose. *Richards* v.

10

Hendee v. Cleaveland.

*Wheeler*, 2 Aik. 369 ; *Rand* v. *Townshend*, 26 Vt. 670 ; *Wood-stock* v. *Gallup*, 28 Vt. 587 ; *Hall* v. *Crossman*, 27 Vt. 297 ; *Moore* v. *Chester*, 45 Vt. 503 ; *Orange* v. *Bill*, 29 Vt. 442 ; High's Extraordinary Remedies, s. 148, *et seq.*

The Probate Court having power to authorize and require the investment of the wards' personal funds in real estate, it is obviously competent for them to confirm and establish the act when once done. At all events it would become a legal investment from the time of the decree.

It is no objection to the validity of these proceedings that the deed passed from the guardian himself, because it was all done under the direct sanction and direction of the Probate Court.

The court erred in charging the guardian interest on the $1400, and at the same time refusing to allow rent for the use and occupation of the premises by the wards.

*Hendee & Fisk*, for the plaintiffs.

Under s. 52, c. 73, p. 485, Gen. Sts., the Probate Court has revisory power extending back and covering every transaction of the guardian, and has full power to revise all former settlements of the guardian's accounts.

Guardians are appointed to protect the property and rights of their wards. They are creatures of the statutes and must in what they do conform strictly to the requirements of the statutes.

A guardian has no right to trade with himself on account of his ward, and cannot convert the personal property of his ward into real estate or buy land with the money of his ward, or buy or use the property of his ward for his own benefit. 2 vol. 11th Ed. Kent's Com. 247–8 ; 1 Head, Tenn. 357 ; Tyler on Infancy, 262 ; *White* v. *Parker*, 8 Barb. 48. But in this State the guardian may invest the funds of his ward in real estate under an order of the Probate Court. ss. 31–32, Gen. Sts., p. 480, c. 72.

Such order to invest should issue before the investment is made, and the statute contemplates and provides for application, notice and a hearing. If a guardian invests his ward's funds in real estate without such order, he cannot be relieved by an order issued three years after, confirming or ratifying the transaction. The

statute does not provide for such a proceeding in spirit or terms. A guardian cannot be relieved from the effect of a wrong act or an illegal act, and the Probate Court can give him no aid if it acts without authority of law.

The proceedings of a Probate Court must be proved by the record. It is a court of record. 30th Vt. 177. An entire record cannot be supplied, and if it can be, it would be a dangerous precedent to permit it when near three years have elapsed, and the person who acted as the court is dead.

If the Probate Court could ratify the investment, it could not without proper notice. The notice should specify particularly the object of the proceeding. The notice in this case was insufficient. An order of the court ratifying the investment could not legitimately follow the notice given, or be the proper result of a hearing under such a notice. " Parties interested " were entitled to be notified of just what was to be asked of the court. As to the $1400 ; he purchased without license from himself, and permitted the mother of his wards to live there ; and *she* should pay the rent if any one, as he was allowed a reasonable sum for the board and custody of his wards.

The opinion of the court was delivered by

POWERS, J. Mandamus is a proper remedy to correct the records of the Probate Court in accordance with the facts.

The case then stands for consideration as it would if the probate records disclosed the facts sought to be shown by parol.

The defendant while guardian, under the statute, of the plaintiff's wards, without any license from the Probate Court undertook to sell to his wards certain real estate of his own ; and in this accounting asks to be allowed for the same, against the protest of the wards or their legal representative, at the price he fixed when he made his conveyance.

The defendant justifies his claim on the ground of his good faith in the transaction, and the action of the Probate Court taken two or three years after the conveyance, which he claims ratifies his action.

A guardian in respect to his wards' estate stands in the position

of a trustee, answerable to his wards for all advantage made by or through the estate; and accountable for all waste or deterioration traceable to his default.

He may handle the fund as it comes to him in any prudent manner that will make income, short of changing its character from personal to real property, or *vice versa*. He may thus change its character *only* by the license of the Probate Court. But the license of the Probate Court merely confers upon the guardian the power to invest the personal fund in real estate. It does not authorize any *particular* investment; but gives the right to make *an* investment. Armed with such license, the guardian is guided by his own discretion, respecting the investment he will make, subject, in the exercise of this discretion, to the peril of having his action reviewed by his wards when they come of age. It is doubtless, true, that a subsequent confirmation by the court of a precedent act done without authority, is equivalent to a delegation of power to do the act.

The action of the Probate Court in March, 1876, professing to give the defendant authority to invest his wards' funds in real estate, was in no sense a confirmation of his previous unauthorized investment. The notice of the application contemplated a prospective investment; and the court could act only upon the application as made. Parties interested had the right to assume that the action of the court would be in keeping with the tenor of the application, and would have no cause to understand that a previous default would be justified.

But if the Probate Court upon a proper application for the purpose, duly advertised, had by formal decree ratified the defendant's act in selling his own property to his wards, it would be no protection to him in this accounting.

A guardian *cannot deal with himself*. In selling his own property to his wards he has an interest to get the *largest* price, while as guardian, acting for the interest of his wards, it is his duty to get the property at the *lowest* price. There is thus an irrepressible conflict between *duty* and *interest;* and all experience teaches what the inevitable result must be. This rule is so unbending that courts will not listen to proof that the guardian actually

gained no advantage. The rule does not rest upon any theory that wrong doing in fact has taken place; but upon the broad ground of public policy that shuts the door against *temptation*, by *forbidding* the act. In *Wormley* v. *Wormley*, 8 Wheaton, 421, Judge STORY says: " No rule is better settled than that a trustee cannot become a purchaser of the trust estate. He cannot be at once vendor and vendee. He cannot represent in himself two opposite and conflicting interests, . . . . and the law has wisely prohibited any person from assuming such dangerous and incompatible characters."

And in the leading case, in the same court, *Michoud* v. *Girod*, 4 Howard, 503, in which the English and American cases, as well as the civil law on the subject, are exhaustively reviewed, Justice WAYNE tersely epitomized the rule and the reasons for it as follows: " The general rule stands upon one great moral obligation to refrain from placing ourselves in relations which ordinarily excite a conflict between self-interest and integrity. It restrains all agents, public and private; but the value of the prohibition is most felt, and its application is more frequent, in the private relations in which the vendor and purchaser may stand towards each other. The disability to purchase is a consequence of that relation between them which imposes on the one a duty to protect the interest of the other, from the faithful discharge of which duty his own personal interest may withdraw him. In this conflict of interest, the law wisely interposes. It acts not on the possibility, that, in some cases, the sense of that duty may prevail over the motives of self-interest, but it provides against the probability in many cases, and the danger in all cases, that the dictates of self-interest will exercise a predominant influence, and supersede that of duty. It, therefore, prohibits a party from purchasing on his own account that which his duty or trust requires him to sell on account of another, and from purchasing on account of another that which he sells on his own account. In effect, he is not allowed to unite the two opposite characters of buyer and seller, because his interests when he is the seller or buyer on his own account, are directly conflicting with those of the person on whose account he buys or sells."

In *Davone* v. *Fanning*, 2 Johnson's Chan. 252, Chancellor KENT, in a critical review of the authorities, lays down the same doctrine. The latter case was decided in 1816, and since that date the rule as there laid down has been rigorously adhered to by all the courts in this country.

The investment of the defendant, however, though unauthorized and invalid, might be accepted by the wards at their election on coming of age, or they might ignore it and claim their money. The present guardian elects for them to take the latter course. The Probate Court, therefore, properly charged the defendant the $3200 invested in the tenement house.

The item of $532.93 charged to defendant as interest upon the sum of $1400, invested in real estate without license, is a proper charge against the defendant. The wards may disregard this investment and claim their money with interest.

There was no error in the judgment of the County Court, confirming the action of the Probate Court, and the same is affirmed ; and it is ordered that this judgment be certified to the Probate Court.