Vermont Superior Court
Filed 01/31/25

SUPERIOR COURT

Washington Unit
65 State Street
Montpelier VT 05602
802-828-2091
www.vermontjudiciary.org



CIVIL DIVISION

Case No. 23-CV-04886

In re: Miriam Thomas

## Opinion and Order on Motion to Dismiss

This is an appeal from probate division, No. 333-5-18 Wnpr. On October 2, 2023, the probate division issued a "Consolidated Final Judgment" against former financial guardian Paul Thomas. In that case, it awarded the Estate of Miriam Thomas ("Estate") a reimbursement of $1,013,981, and awarded attorney's fees to the Estate, as well as costs to Bruce Thomas and Elizabeth Thomas, beneficiaries of the Estate. Paul[1] appealed that order, and has moved to dismiss for lack of jurisdiction, lack of standing, and failure to state a claim upon which relief can be granted. The Estate opposed the dismissal, and the Court heard oral arguments on the motion. The Court makes the following determinations.

## Background

Paul was appointed Miriam's financial guardian in 2010. In 2016, Bruce and Elizabeth filed motions to remove Paul under 14 V.S.A. § 3077 and Vt. R. Prob. P. 67. In March 2018, the Probate Division concluded that Paul had breached his duties as guardian and ordered him to be replaced within 30 days of the order. The

---

[1] For ease of reference and clarity, the Court will employ the first names of the various persons bearing the Thomas surname.

order also instructed Paul to submit a final accounting and supporting documentation, and also prohibited Paul from using Miriam's resources without prior approval of the court. The court stated that it would schedule an evidentiary hearing to determine Paul's liability, if any, for his deficiencies as guardian. *See In re Guardianship of Miriam H. Thomas*, No. OeP184-09 GI, slip op. at 4–10 (Vt. Super. Ct. Mar. 21, 2018) (Lewis, J.). The court appointed Stephen Ankuda as successor guardian later in 2018. *Id.* After Miriam died in April 2019, the court appointed Ankuda as the administrator of the Estate. At some point, the Estate was substituted as a party. The record does not clearly show that any objection was lodged to the substitution.

In 2020, the probate division conducted evidentiary hearings to determine Paul's potential liability to the estate. On January 25, 2021, the probate division issued an order recounting the deficiencies it referenced in its March 2018 order. *In re: Thomas*, No 333-5-18 Wnpr, slip op at 1–4 (Vt. Super. Ct. Jan. 25, 2021) (Kilgore, J.). The probate division made new factual findings about each deficiency, then concluded that Paul did not meet his burden or showing that his actions as a fiduciary were reasonable "whether by clear and convincing evidence or a lesser standard." *Id.*, ¶ 105. The court noted that, while the accounts for 2010, 2011, and 2012 had been allowed, it found no record that accounts after 2012 had ever been approved. *Id.*, ¶ 108. The court concluded that Paul's fees as guardian were neither reasonable nor supported by documentary evidence, and that his self-dealing was not made in good faith or on fair terms. *Id.*, ¶¶ 112 and 117.

2

The probate division went on to apply 14 V.S.A. § 917 and the Restatement of the Law—Trusts § 100 & §100, cmt a (3d) to make conclusions about the "damages" caused by Paul's breaches of duty and waste. *Id.*, ¶¶ 126–130; 130–143; 145. The court summarized the grounds for Paul's liability as: filing documents "late or not at all," disobeying court orders, overcharging the estate, engaging in self-dealing and conflict of interest, failing to maintain adequate records, and misrepresenting the financial status of the ward's estate to the court. *Id.*, ¶ 144. The court tabulated the amount that Paul was ordered to return to the estate to "make whole the ward or in this case the ward's estate" at $1,013,981. *Id.*, ¶ 145. Further, the probate division ordered Paul to reimburse the Estate for attorney's fees to be determined later. *Id.*, ¶¶ 147-149.

Paul appealed to this court, which dismissed the matter and vacated the January 25, 2021 probate order, concluding that the probate division lacked subject-matter jurisdiction to order compensatory damages in that context. *Thomas v. Thomas*, No. 21-CV-00602, slip op. at 3–6 (Vt. Super Ct. Feb. 4, 2022) (Mello, J.). The civil division reasoned that neither 14 V.S.A. § 3077 nor Vt. R. Prob. P. 67, nor any statute controlling guardians, gives probate division "the authority to evaluate damage claims against guardians." *Id.* at 2. The court determined that Vt. R. Prob. P. 67 was intended "to serve coercive or punitive purposes while a person is still a fiduciary," *i.e.,* before removal. *Id.* at 3. The court also examined the question of whether 14 V.S.A. § 917 applied in this situation, and concluded that like Vt. R. Prob. P. 67, section 917 was intended to empower the probate division to regulate a

3

guardian's conduct, and could no longer serve that purpose after Paul had been removed as guardian and the ward had died. *Id*. at 4. An appeal followed.

The Vermont Supreme Court determined that the civil division lacked subject-matter jurisdiction to hear the appeal because the probate division's order had not yet determined the attorney's fee award and, thus, was not a final order subject to appeal. *In re Est. of Thomas*, 2022 VT 59, ¶ 15, 217 Vt. 368, 373–74. It remanded the case to the probate court.

On remand, the probate division issued a Decision on Motions to Dismiss and Motion for Attorney's Fees and Costs, in which it concluded that "[a]n ancillary and incidental power necessary to enforce Paul Thomas' statutory obligations is to place a value on the breach of that duty." *In re: Thomas*, 333-5-18 Wnpr, slip op. at 2 (Vt. Super. Ct. Oct 2, 2023) (Kilgore, J.). Further, the probate division determined that 14 V.S.A. § 917 includes not only regulation of estate administrators, but also applies to guardians, giving the probate division the authority to order a guardian to pay attorney fees and "losses incurred because of an act or omission." *Id*. at 7 (quoting 14 V.S.A. § 917).

In a Consolidated Final Judgment, the probate division referred to the "damages" that it had determined in the January 25, 2021 "Losses Order" and added them to its determination of attorney's fees and costs. *In re: Thomas*, 333-5-18 Wnpr, slip op. at 1–2 (Vt. Super. Ct. Oct. 2, 2023) (Kilgore, J.). It clarified, however, that it had not determined tort claims or awarded damages but, instead, had determined the sums necessary to make the Estate whole based on the final

4

accounting. It also noted that the Consolidated Final Judgment did "not discharge Paul Thomas as former guardian of the Ward," and that, following its entry, "the Ward's representative may prosecute the bond pursuant to the procedures contained in 14 V.S.A. § 2108." *Id.* at 2. Paul now appeals the October 2, 2023 Consolidated Final Judgment.

Discussion

Paul makes three primary arguments in support of dismissal: lack of subject-matter jurisdiction, lack of standing, and lack of proper notice. The parties do not disagree as to the legal standards that the Court should employ to analyze the motions. The Court will discuss each point in turn.

I.     Jurisdiction

Paul asserts that the probate division does not have subject-matter jurisdiction to award damages under the Vt. R. Prob. P. 67, 14 V.S.A. § 3077 or 14 V.S.A. § 917. No doubt, the probate division has a special jurisdiction that is limited by statute. *In re Proctor*, 140 Vt 5, 8 (1981). In the present context, its powers include the following. "The Probate Division of the Superior Court shall have supervisory authority over guardians. Any interested person may seek review of a guardian's proposed or past actions by filing a motion with the court." 14 V.S.A. § 3062(c). "After notice and hearing, the [probate division] may terminate or modify the guardianship, appoint a successor guardian, or restrict the powers of a guardian, consistent with the court's findings and conclusions of law." 14 V.S.A. § 3077(b). The probate division has jurisdiction to settle the guardian's account. 14

5

V.S.A. § 2602. Guardians, in turn, are required to file annual reports with the court, including financial accountings. 14 V.S.A. § 3076(a) and (b)(1). In the case of financial guardianships, "at the termination of the guardianship, the guardian shall render a final accounting." 14 V.S.A. § 3076(c). The annual accounts "render and settle with the court an account of the proceeds and expenditure of his or her ward's estate." 14 V.S.A. § 2921.

"At the expiration of his or her trust, such guardian shall render and settle with the Probate Division of the Superior Court his or her account of the property of his or her ward, including the income and proceeds of the sale of his or her personal and real estate, and pay over and deliver to persons entitled to the same the estate and effects remaining in his or her hands, or due from him or her on such settlements." *Id.* Within two years of the termination of a guardianship, the ward or the ward's legal representatives "may file a motion to reopen the estate for a reexamination of the account" that the probate division previously allowed. 14 V.S.A. § 2927. The probate court may charge a guardian for using a ward's funds in a manner that is not authorized. *See Hendee v. Cleaveland*, 54 Vt. 142, 150 (1881).

Similarly, Vt. R. Prob. P. 66 governs the procedure for accounts. *See* Vt. R. Prob. P. 66(c) (notice of hearing); (d) (form of accounts); (e) (standards for accounts). Vt. R. Prob. P. 67(b) provides for a procedure for supervision of fiduciaries. The procedure requires notice to correct deficiencies, as well as a hearing on sanctions in the event that a fiduciary fails to perform duties as required. Vt. R. Prob. P. 67(b)(1)–(4).

Paul does not contest the probate division's jurisdiction to have conducted a proceeding under Rule 67 to terminate him in accordance with 14 V.S.A. § 3077(b). Indeed, that is what the court ordered on March 21, 2018. That "Rule 67 Notice and Order" listed specific deficiencies and ordered Paul to be replaced as financial guardian. *In re Guardianship of Miriam H. Thomas*, No. OeP184-09 GI, slip op. at 8 (Vt. Super. Ct. Mar. 21, 2018) (Lewis, J.). He maintains, however, that it can do nothing more than discharge him and that the remaining hearings were beyond the court's authority.

Specifically, he takes issue with the orders that: required him to prepare and submit a final accounting, *id*. at 8; ordered him to provide records for 2011-2016, *id*. at 9–10; and ordered an evidentiary hearing "to determine the Guardian's liability, if any, to the estate resulting from the guardian's deficiencies," *id*. at 10. Likewise, he challenged the following hearings, which the probate division eventually conducted in 2020, that resulted in an order finding that Paul had breached his duties as guardian and owed over $1 million to make the Estate whole.

While Paul is correct that Section 3077 does not expressly authorize a damages hearing, *per se*, the Court believes that the probate court's actions are better viewed as simply a final accounting and settlement of accounts as allowed by the statutes outlined above. Certainly, those hearings delved into the alleged breaches of fiduciary duty and waste associated with Paul's term as guardian, but that evidence served primarily to establish the "final accounting" and settlement of accounts and the losses that were attributable to Paul's actions. The parties

7

protesting Paul's claimed expenses brought evidence of the disarray of records and misuse of the ward's assets. The court assessed the cost of bringing the disarray of financial records into order. *See* 14 V.S.A. § 917. Nothing in the probate division's 2021 order, however, appears to award relief other than the return of funds or the value of estate property and records that the court determined Paul did not use or maintain properly. As a result, the remedy was of an entirely restitutionary nature.

In its later Consolidated Final Judgment, the probate division made just that point. It clarified that its January 25, 2021 Findings and Order—which it called a "Losses Order"—had not decided any tort claims but, rather, had determined losses that Paul's misconduct caused in the context of the final accounting and discharge process. *In re: Thomas*, No. 333-5-18 Wnpr, slip op. at 1, n.1 (Vt. Super. Ct. Oct 2, 2023) (Kilgore, J.). It concluded that determining such losses are a necessary part of its duties and that it is "[a]n ancillary and incidental power necessary to enforce Paul Thomas' statutory obligations." *In re: Thomas*, No. 333-5-18 Wnpr, slip op. at 2 (Vt. Super. Ct. Oct 2, 2023) (Kilgore, J.); *see In re Prudenzano's Will*, 116 Vt. 55, 63 (1949).

The probate division further grounded its authority in 14 V.S.A. § 917, since guardianships are "other matters within the court's jurisdiction." *In re: Thomas*, No. 333-5-18 Wnpr, slip op. at 2 (Vt. Super. Ct. Oct 2, 2023) (Kilgore, J.). Section 917 provides as follows:

> The Probate Division of the Superior Court shall regulate the conduct of persons appearing in proceedings or involved in the administration of estates or other matters

within the court's jurisdiction. When it appears to the court that a person has failed to comply with procedures required by law or the Rules of Probate Procedure, or that an estate is not being promptly and properly administered, or that a fiduciary is incapable or unsuitable to discharge the trust, the court may give notice of the complaint or omission together with a notice to correct the deficiency or complaint within a specified period of time or cause the party to appear and answer the matter. Notice shall be given as provided by the Rules of Probate Procedure. The court may restrain a person from performing specified acts or the exercise of any powers or discharge of any duties of office, or make any other order to secure proper performance of duty. It may exercise the powers of contempt; tax costs, including surcharge; order a party to pay to other parties the amount of reasonable expenses, including reasonable attorney's fees, or *losses incurred because of an act or omission*; and remove or suspend a fiduciary.

14 V.S.A. § 917 (emphasis added).

This court previously ruled that Section 3077 and Rule 67 do not provide for a procedure and damages order such as the one at issue here. It further concluded that, even if section 917 applies to guardians, despite its location in the code, it is geared toward regulating the behavior of a fiduciary rather than encompassing equitable awards to aggrieved parties "after a fiduciary has been removed and is no longer subject to the probate courts' regulatory powers," especially because the probate court stated that the damages were compensatory rather than regulatory. *See Thomas v. Thomas*, No. 21-CV-00602, slip op. at 4 (Vt. Super. Ct. Feb. 4, 2022) (Mello, J.).

Upon closer examination of the record and briefing of the parties in this appeal, though, while having been "removed" as beneficiary, Paul had not formally

9

been "discharged" by the probate court. The guardianship statutes, thus, still required a final accounting and clearly empowered the probate division to decide whether the fiduciary's account was allowed. The probate division had ordered Paul to prepare the final accounting and to prepare financial records for previous years. That conclusion is made plain in the Consolidated Final Judgment, in which the probate division noted that Paul had not yet been discharged.

Accordingly, the 2018 order falls under the Section 3077 authority to modify the guardianship and restrict Paul as guardian, and to order him to prepare a final accounting. It also falls with the probate court's authority under Section 917.[2] While inartfully structured as a decision on damages resulting from breaches, the probate division's January 25, 2021 order essentially made findings regarding the guardian's use of the ward's estate's assets and determined that over $1 million of them were not allowed, *i.e.,* fell outside of the allowable use of the resources under the guardian's authority.

---

[2] In accordance with 14 V.S.A. § 917, the probate court ordered Paul to pay for losses to the ward's estate incurred by his improper use of or failure to maintain the ward's property. The order also charged Paul for the reasonable restorative costs incurred by the need for the successor guardian to put the estate's records in order due to the disarray that Paul caused. Paul argues that section 917 applies to executors and administrators, in accordance with the manner in which it is codified. The Court concludes, however, that it applies to guardians insofar as they account for and dispose of a ward's estate. 14 V.S.A. § 2793 ("A guardian shall account for and dispose of the personal estate of his or her ward, as administrators account for and dispose of personal estate in the settlement of estates.").

10

Though lending some confusion to the statutory scheme, 14 V.S.A. § 2108 does not fully support Paul's view as to the scope of the probate court's authority. Under Section 2108, a person claiming to be injured by a breach of the condition of a bond given to the probate division "may file a motion for permission to prosecute the bond and shall give a bond to the adverse party to the satisfaction of the Probate Division of the Superior Court, on the condition that he or she will prosecute it to effect and pay the costs awarded if recovery is not obtained." 14 V.S.A. § 2108(1). After the probate division grants permission to prosecute the bond, the applicant then files the documentation with the writ with the Superior Court [Civil Division], and the applicant is then deemed to be the prosecutor of the bond. 14 V.S.A. § 2108(4). The prosecutor must assign and set forth the breaches of the bond condition, and the Superior Court then renders judgment "as on default" for the penalty of the bond in favor of the probate division and against the defendants. 14 V.S.A. § 2108(4)–(5). If the defendants object, they plead a denial. 14 V.S.A. § 2108(6). "On trial, if the issue on the plea or demurrer is found in favor of the plaintiff, judgment shall be rendered for the penalty of the bond, as provided in subdivision (5) of this section, and the prosecutor shall recover against the defendants entering the plea or demurrer the costs of the action, and have execution for them in his or her own name." 14 V.S.A. § 2108(7).

Section 2108 can certainly be used to prosecute independent torts or to seek compensatory or punitive damages that might go beyond the restitutionary authority of the probate court. It might also be used, as in this case, to prosecute a

11

claim seeking to collect from a guardian who has been deemed to owe money to the ward through the final accounting done by the probate court but has failed to repay those sums.

Given that process, it follows that the findings of the probate court as to the losses caused by Paul's actions fall within the probate division's authority to order a final accounting, determine whether Paul's expenditures were allowed, and require Paul to return the Estate assets to the Estate.[3] To the extent that Paul cannot pay the amount due, the representative of the Estate may pursue the Section 2108 procedure and request permission to prosecute the bond.

Additionally, allowing the probate court to settle accounts and make determinations as to losses caused by a guardian also serves the practical and efficient administration of guardianships. The Vermont Supreme Court has held that the probate division acted within its jurisdictional limits when it determined the title of an account in dispute within the context of an estate proceeding, when it "further[ed] the sound, practical, and efficient administration of estates. *In re Est. of Piche*, 166 Vt. 479, 484 (1997) ("We agree with the executor in this case that the

---

[3] The archaic and outmoded appellate process that follows probate court determinations also lends confusion to the admittedly awkward statutory scheme. If a prosecution is sought against a guardian who did not appeal from a final accounting determination or who lost in the civil division contesting such accounting, liability and amounts owed might well have preclusive effect in a Section 2108 collection action in the civil division. Where, as here, the accounting is being contested and is subject to a *de-novo* determination by this Court, it makes the most sense that the determination of the final accounting be undertaken in the first instance.

12

probate court has jurisdiction to determine title to personal property; to find otherwise would deprive the probate court of the ability to function efficiently and effectively and result in many contested cases having hearings in the superior court before the settlement of the estate could proceed. We decline to complicate the probate process by precluding the probate court from deciding matters that are necessary and incidental to the effective administration of estates.").

In this case, hearing evidence of alleged malfeasance—whatever the nomenclature used—was incidental and ancillary to determining which expenses and uses of the ward's estate were and were not allowed. The proceedings in the probate division had already been prolonged for other reasons, including removal of the proceeding to a different unit, and it would have delayed the matter even more to adjudicate tort claims in the civil division before making the final accounting. The probate division's 2018 order already found that Paul's acts and omissions were sufficient to justify his removal as guardian, and the losses that were the subject of the 2020 hearings stemmed directly from those deficiencies. Paul's suggestion that the accounting cannot be assessed or finalized unless the Estate first prosecutes an action in the civil division, is antithetical to the fair and logical administration of guardianships.

Paul's remaining arguments against that approach are weighty but do not counsel a different result. Paul contends that when Miriam died, the guardianship ended, and the probate division's role of supervising the guardian ended. If at the time of her death, Miriam possessed tort claims against Paul for breach of fiduciary

13

duty, he maintains that the Estate should have pursued those claims in the civil division in accordance with Vermont's survival statutes and case law. *See* 14 V.S.A. §§ 1451–1453; *Est. of Kuhling by Kuhling v. Glaze*, 2018 VT 75, ¶¶ 12-16, 208 Vt. 273, 280–82.

The fact that the Estate potentially could bring tort claims in the civil division, however, does not exempt a guardian from completing his duty to submit his final accounting in the probate division and does not suggest that the probate court cannot make that final accounting and take account of what losses were caused to the ward by the guardian's conduct as guardian. There is nothing in the probate statutes to suggest that upon a ward's death, the guardian's duties cease with regard to a final accounting. Indeed, as noted above, Paul was not discharged by the probate court.

Paul further argues that he should be afforded the full panoply of rights of a litigant in civil court and that Section 2108 is the correct procedural vehicle for such a claim. He asserts that the conduct cited by the probate court sounds in tort and that he should have the right to defend those claims in the civil division, with the Estate bearing the burden of proof and with full discovery.

The Court believes, however, that–first and foremost–a guardian is a fiduciary and has fundamental duties to the ward and the probate court. Part of those duties entail submitting to a final accounting and bearing the burden of showing that his actions met his fiduciary duties to the usually quite vulnerable ward. Under the circumstances of this case, the work of the probate court did not

14

assess tort damages but determined the losses suffered by the ward and ascertained the guardian's final accounting. It concluded that certain expenditures and uses of the ward's property were not consistent with Paul's duties as guardian and that those expenses and uses should not be allowed.

Annual accounts and a final accounting are duties that are clearly laid out in the statutes and should have been known to him as guardian. The burden to account for expenses and use of the ward's property was properly placed on Paul as guardian, unlike in a tort action in the civil division, in which the Estate would have had the burden of proof as plaintiff. Lastly, as noted above, the relief afforded by the probate court was restitutionary in nature and falls within the traditional powers of the chancery courts, of which our probate courts are the descendants. *See* 4 V.S.A. § 219; *see also Manley v. Brattleboro Tr. Co.*, 116 Vt. 460, 463 (1951) (jurisdiction of probate courts is not original, but is limited and special, and probate courts have general equity powers to apply in accordance with the statutes conferring their jurisdiction).

As a result, the Court concludes that the actions taken by the probate court towards Paul were within, at least, the outer sphere of its jurisdiction.[4]

---

[4] Additionally, the Court notes that Paul can obtain discovery in the civil division, and has a right to claim a jury trial on matters so triable. His statement of questions on appeal makes such a claim.

15

## II. Standing

Paul argues next that the Estate lacks standing to prosecute a Rule 67 proceeding after the death of the ward. Paul contends that "[a] guardianship proceeding is not an action that survives death under §§ 1451 or 1452." Motion to Dismiss at 11. This argument incorrectly presumes that the evidentiary proceedings from 2020, after Miriam's death, occurred pursuant to Rule 67. The Rule 67 proceeding, however, culminated in the 2018 order that removed Paul as guardian, restricted his activities with regard to the ward's estate, and most crucially, ordered him to submit a final accounting. That order also indicated that an evidentiary hearing to determine liability, if any, would be scheduled. A final accounting and settlement of account must still occur in the event of a ward's death, and it is only logical that the surviving guardian—Attorney Ankuda—would participate in such procedures. Both the Estate and Attorney Ankuda as successor guardian would be "interested persons" under the probate statutes for such a proceeding. 14 V.S.A. §§ 3061 &3062(c); *see* Vt. R. Prob. P. 17 & 18.

## III. Lack of Notice

Paul contends that the Estate never filed a proper pleading to commence a petition with respect to the liability hearing and that he had insufficient notice of the supposed deficiencies in the accountings. The Court disagrees. The purported "liability" hearing was never a separate action—it followed from an order that removed Paul as guardian and required him to produce a final accounting. A guardian is expressly required to submit accounts to probate division, which has

16

authority to allow or reject the accounts, and to order the restitution for claimed expenses that are not allowed. *See* 14 V.S.A. § 917 (probate division may "order a party to pay … losses incurred because of an act or omission"); *see also* 4 V.S.A. § 219 ("The powers and jurisdiction of the courts that were previously vested in the courts of chancery are vested in the Superior Court. Superior, Environmental, and Probate judges have the powers of a chancellor in passing upon all civil matters that may come before them."). The same applies to the final accounting. In none of those proceedings would a guardian have the right to a separately filed "complaint," as Paul uses the term.

Nor can Paul realistically claim lack of notice as to the substance of the allegations against him that were determined by the probate court. First, Paul made no such claim in the probate court. Second, the Thomas siblings filed objections to Paul's accountings, the probate court set hearings on whether to allow the accountings for specific years, allowed a significant period of discovery as to the issues as to those years, ordered Paul to produce all items supporting his use of the ward's funds and compensation to himself during those periods, and held a lengthy evidentiary hearing on the issues spanning approximately six days. The Court sees no viable claim for lack of notice lack or lack of proper process regarding the probate court's assessment of Paul's conduct, the attendant losses that resulted to the ward, and the restitutionary amounts needed to make the ward and her Estate whole.

17

## Conclusion

The arguments and countervailing legal arguments in this action are significant, and the statutes and Rules at play do not point to a definitive result. Nonetheless, in light of the foregoing considerations, the Court believes the interpretations offered in opposition to the motion to dismiss have greater weight. On those bases, the motion to dismiss is denied.

Electronically signed on Tuesday, January 28, 2025, per V.R.E.F. 9(d).

_____
Timothy B. Tomasi
Superior Court Judge

18