NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2026 VT 12

No. 25-AP-160

| | |
|---|---|
| In re Miriam Thomas<br>(Paul Thomas, Appellant) | Supreme Court<br><br>On Appeal from<br>Superior Court, Washington Unit,<br>Civil Division<br><br>January Term, 2026 |

Timothy B. Tomasi, J.

Chad V. Bonanni of Bergeron, Paradis & Fitzpatrick PC, Essex Junction, for Appellant.

Justin A. Brown of Sheehey Furlong & Behm P.C., Burlington, for Appellee.


PRESENT: Reiber, C.J., Eaton, J., and Valente and Richardson, Supr. JJ., and Cohen, J. (Ret.), Specially Assigned


¶ 1. **EATON, J.** Paul Thomas brings this interlocutory appeal from a civil division order determining that the probate division had subject-matter jurisdiction to require him to reimburse the estate of his mother, Miriam Thomas, for losses the probate division found resulted from his malfeasance in his role as her financial guardian. We conclude that the evidentiary hearing held by the probate division was a valid exercise of its supervisory power over guardians and that 14 V.S.A. § 917 authorizes the probate division to order a guardian to reimburse a ward's estate for losses resulting from the guardian's fiduciary misconduct. We therefore affirm the civil division's order and remand the matter to that court for further proceedings.

I. Background

¶ 2.     Paul, Mary, Bruce, Elizabeth, and Bryce Thomas are the children of Miriam Thomas.[1]  In November 2009, Bruce filed a petition for involuntary guardianship of Miriam in the probate division.  He requested that he be appointed as Miriam's financial guardian and Elizabeth be appointed as her healthcare guardian.  Paul and Mary each opposed Bruce's petition, and Paul filed a counterpetition seeking to be appointed as Miriam's guardian; Bruce, Elizabeth, and Bryce opposed Paul's counterpetition.

¶ 3.     In January 2010, the probate division issued an order concluding that Miriam— then eighty-five years old and living in a nursing home—was a person in need of guardianship because she suffered from dementia that impaired her judgment and functioning.  After weighing the siblings' competing petitions, the court appointed Paul as Miriam's guardian with plenary powers, including the powers attendant to financial guardianship.

¶ 4.     The following month, Paul filed his guardian's bond and an inventory of Miriam's estate with the probate division.  The inventory reflected that Miriam had numerous real-estate holdings—including several woodlots—in addition to other assets.  It also included an "estimated value" of Miriam's unspecified personal property.

¶ 5.     In the years that followed, Paul filed annual accounts; Bruce, Elizabeth, and Bryce opposed Paul's motions to allow those accounts.  The probate division allowed Paul's accounts for 2010 through 2012, but, for reasons that are not clear from the record, did not promptly take up the motions to allow accounts that he filed between 2013 and 2017.

¶ 6.     In 2016, Bruce, Elizabeth, and Bryce moved under 14 V.S.A. § 3077 and Vermont Rule of Probate Procedure 67 for Paul's removal as Miriam's financial guardian.  See 14 V.S.A. § 3077 (providing that person interested in welfare of ward may move for termination or

_____

[1]  Because this case involves six individuals bearing the Thomas surname, we refer to each by their first name for the sake of clarity.

modification of guardianship); V.R.P.P. 67 (setting forth procedures for probate division's supervision of fiduciaries). They alleged that Paul had breached his fiduciary duties, failed to follow the probate division's orders, and engaged in fraud. They also requested that the court compel Paul to reimburse Miriam's estate for any expenses improperly charged to it. Before ruling on the siblings' motion, the probate court directed the parties to mediate their dispute. Mediation was unsuccessful.

¶ 7. In March 2018, the probate court issued a notice and order pursuant to Rule 67. The notice enumerated sixteen categories of deficiencies in Paul's compliance with his fiduciary duties and directed that, to prevent further harm to Miriam's estate, Paul be replaced as financial guardian within thirty days. Paul was ordered to submit his final accounting accompanied by all necessary supporting documentation. The conclusion of the order indicated that the probate division would set an evidentiary hearing to determine Paul's "liability, if any, to the estate" resulting from his deficiencies in his role as guardian.

¶ 8. Attorney Stephen Ankuda was appointed as Miriam's successor financial guardian in October 2018. Paul filed and moved for allowance of his final account in November 2018.

¶ 9. Miriam passed away in April 2019, and Attorney Ankuda was appointed administrator of her estate. In that role, he succeeded Bruce, Elizabeth, and Bryce as the petitioners in the Rule 67 proceeding.

¶ 10. Prior to the evidentiary hearing, the probate division issued an order reopening the previously approved accounts for 2010, 2011, and 2012. The hearing took place over the course of six days beginning in August 2020. The estate's administrator was represented by counsel; Paul, Mary, Bruce, Elizabeth, and Bryce were self-represented.

¶ 11. In January 2021, the probate division issued a lengthy written order including the following factual findings regarding the deficiencies noticed in the Rule 67 order. During the entire period in which Paul served as his mother's financial guardian, he wasted her real and

3

personal assets and failed to manage her woodlots frugally. See 14 V.S.A. § 2797 (requiring that guardian manage ward's estate "frugally and without waste"). Paul neglected to make or maintain adequate records of his financial activities and took actions which amounted to self-dealing and conflict of interest. See id. § 3071(c) (providing that guardian "shall always serve the interests of the person under guardianship and shall bring any potential conflicts of interest to the attention of the court"). He never filed an inventory of Miriam's personal property as required by statute and the conditions of his bond. None of Paul's annual accountings were timely filed within thirty days of the anniversary date of his appointment as mandated by 14 V.S.A. § 3076(a). Moreover, the accountings included "significantly misleading information" regarding the proceeds and expenditure of Miriam's estate. See id. § 2921 (providing that guardian "shall render and settle with the court an account of the proceeds and expenditure of his or her ward's estate"). Paul charged the estate fees for his services that were neither reasonable nor supported by documentary evidence and did so without seeking the probate division's approval. See id. § 3076(d)(2) (permitting probate division to approve payment of fees "if it finds the expenses were reasonable and supported by documentary evidence"). In sum, the probate division concluded, during the time that Paul served as Miriam's financial guardian, he failed to comply with his fiduciary obligations and consistently disobeyed court orders, overcharged Miriam's estate, engaged in self-dealing, failed to keep or maintain adequate records of his financial activities, and misrepresented the financial status of the estate to the court.

¶ 12. The probate division cited 14 V.S.A. § 917 and the Restatement (Third) of Trusts § 100 as the source of its authority to award what it characterized as "damages" to Miriam's estate resulting from Paul's conduct. Specifically, the court ordered Paul to return $1,013,981 to the estate. This sum represented $219,124 in excessive fees Paul charged for his services as financial guardian; $269,000 in excessive fees Paul charged the estate for his work in managing Miriam's woodlots; $34,850 in improper real-estate fees; $95,000 for waste resulting from Paul's failure to

pursue a 2011 offer to purchase a residential property within the estate; $154,022 for Paul's personal use of that same residential property without paying rent or expenses and while failing to protect its value; $53,430 for Paul's personal legal fees; $125,000 for waste of a rental property; $5000 for Paul's personal use of motor vehicles that were part of the estate; $50,355 for the waste and destruction of books and antiques that were part of the estate; and $8200 in additional costs incurred by the successor financial guardian resulting from Paul's failure to keep adequate records during his time as financial guardian. In determining the amounts owed, the probate division reviewed the financial-guardianship expenses paid to or claimed by Paul and the woodlot fees charged by Paul, comparing the amounts set forth in Paul's annual reports from 2010 through 2018 with other relevant documentation.

¶ 13. Finally, the court noted that § 917 included an attorney's-fees provision and concluded that the estate, Bruce, and Elizabeth were entitled to reimbursement from Paul for their reasonable attorney's fees and costs resulting from the litigation. It directed them to file affidavits of fees and costs, provided time for Paul to respond, and indicated that after these amounts were determined it would enter a consolidated final judgment.

¶ 14. Instead, Paul immediately appealed the court's January 2021 order to the civil division. There, an attorney appeared on his behalf, and Paul argued, among other things, that the probate division lacked subject-matter jurisdiction to order damages. The civil division agreed and vacated the probate division's order. The estate appealed to this Court. We concluded that the civil division was without subject-matter jurisdiction over the probate appeal because the probate division's January 2021 order was not a final order since it did not settle the outstanding question of attorney's fees. In re Est. of Thomas, 2022 VT 59, ¶ 8, 217 Vt. 368, 295 A.3d 850. Accordingly, we vacated the civil division's order and remanded the matter to the probate division to determine reasonable attorney's fees and costs and issue a final judgment order. Id. ¶ 15.

¶ 15. Before the probate division on remand, Paul moved to dismiss the proceeding, again arguing that the court lacked subject-matter jurisdiction to enter the January 2021 order. The probate division denied the motion to dismiss, again concluding that 14 V.S.A. § 917 applied. It further explained that, in the alternative, its necessary and ancillary powers over guardians and wards extended to the enforcement of a guardian's duties and the concomitant requirement to reimburse the ward or the ward's successor-in-interest when a guardian subject to probate division supervision fails to perform their fiduciary duties. Based on the evidence presented, the court awarded attorney's fees and costs to the estate and Bruce, as well as costs reimbursement to Bruce and Elizabeth for their time spent preparing, reviewing, and editing the documents presented to the court during the six days of hearings. It declined to award Bruce the attorney's fees and costs he sought in connection with the probate division proceedings prior to issuance of the Rule 67 notice and order. In doing so, it concluded that those proceedings represented an intrafamilial dispute of the administration of a guardianship for which each party should bear their own legal expenses. The probate court also exercised its discretion to deny claims by the estate and Bruce for prejudgment interest.

¶ 16. The probate division next issued a consolidated final judgment order directing Paul to—consistent with the findings in the January 2021 order—reimburse the estate in the amount of $1,013,981 "pursuant to the final accounting of the guardianship" and "to make the estate whole." It explained that although the January 2021 order referred to "liability" and "damages," there were no tort claims pending before the probate court, nor did the court purport to adjudicate such claims. After adding the attorney's fees and costs in the amount of $187,843.66, the court issued a consolidated final judgment against Paul for $1,201,824.66. Finally, the probate division indicated that Paul had not yet been discharged and specified that Miriam's representative "may prosecute the bond pursuant to the procedures contained in 14 V.S.A. § 2108," and that, after Paul paid the

monies due and the court settled his final account based on evidence of this payment, Paul could be discharged pursuant to 14 V.S.A. § 2107.

¶ 17. Paul appealed to the civil division, where he moved to dismiss the probate action for lack of subject-matter jurisdiction or, alternatively, failure to state a claim on which relief could be granted. In January 2025, the civil division issued a written order denying Paul's motion to dismiss. As relevant here, the court recognized that although the probate division's January 2021 order was "inartfully structured as a decision on damages resulting from breaches," it was in essence a set of findings regarding whether Paul's use of Miriam's assets fell outside the allowable use of those resources under Paul's authority as guardian. The civil division reasoned that hearing evidence of Paul's alleged malfeasance was incidental and ancillary to determining which expenses and uses of Miriam's estate were and were not allowed. Like the probate division, it pointed to 14 V.S.A. § 917 as the source of the probate division's authority to order Paul "to pay to other parties . . . losses incurred because of an act or omission," see id., in his performance as guardian—specifically, losses to Miriam's estate caused by Paul's improper use of or failure to maintain her property and reasonable costs for the successor financial guardian's work to put the estate's records in order.

¶ 18. Paul sought permission to bring an interlocutory appeal from the civil division's order pursuant to Vermont Rule of Appellate Procedure 5(b)(1). The civil division granted Paul's motion, and we accepted the appeal.

II. Analysis

¶ 19. The question before us is whether the probate division exceeded its subject-matter jurisdiction in conducting the 2020 hearings and entering its final judgment order requiring Paul to reimburse Miriam's estate for the losses it determined resulted from his failure to comply with his statutory and fiduciary obligations as Miriam's financial guardian. Paul argues that the 2020 hearings were not an accounting, but instead an adjudication of his liability on civil tort claims

7

culminating in a damages award—a matter he contends is reserved to the exclusive jurisdiction of the civil division. As a result, Paul contends, the probate division's final order must be vacated.

¶ 20. " 'Subject matter jurisdiction' refers to the power of a court to hear and determine a general class or category of cases." Lamell Lumber Corp. v. Newstress Int'l, Inc., 2007 VT 83, ¶ 6, 182 Vt. 282, 938 A.2d 1215. Whether the probate division exceeded the scope of its subject-matter jurisdiction is a pure question of law that we review de novo. See Maier v. Maier, 2021 VT 88, ¶ 14, 216 Vt. 33, 266 A.3d 778; In re Guardianship of C.H., 2018 VT 76, ¶ 6, 208 Vt. 55, 194 A.3d 1174. We therefore undertake an independent inquiry on this point, affording no deference to the conclusions of the civil and probate divisions below.

¶ 21. We begin with Paul's contention that the probate division proceeding was, on its face, an adjudication of civil tort claims and a corresponding award of money damages. It is true that civil claims typically belong in the civil division. As a court of general jurisdiction, the civil division has "original and exclusive jurisdiction of all original civil actions," except where otherwise provided by law—including "as otherwise provided in section[] . . . 35 . . . of this title," 4 V.S.A. § 31(1).[2] Lamell Lumber, 2007 VT 83, ¶ 6. Section 35 of Title 4 delineates the scope of the probate division's jurisdiction to include, among other things, "jurisdiction of . . . the appointment of guardians, and of the powers, duties, and rights of guardians and wards." Id. § 35(6). Thus, in contrast to the civil division's general jurisdictional grant, "[a] court of probate has a special and limited jurisdiction created, and restricted, by statute." In re Proctor, 140 Vt. 6, 8, 433 A.2d 300, 302 (1981). This distinction is significant to our analysis because while we presume that a court of general jurisdiction has subject-matter jurisdiction unless a showing is

_____

[2] The civil division also has appellate jurisdiction over certain categories of appeals—including probate appeals like this one—and "jurisdiction to hear and dispose of any other matter brought before the court pursuant to law that is not subject to the jurisdiction of another division." 4 V.S.A. § 31(2), (5).

made to the contrary, "the scope of authority of a court of limited jurisdiction . . . is strictly construed." Lamell Lumber, 2007 VT 83, ¶ 6 (quotation and brackets omitted).

¶ 22. Consistent with these principles, we have long recognized that "[a] probate court may act only when clearly bestowed with the power to act; nothing is to be presumed in favor of its jurisdiction." Proctor, 140 Vt. at 8, 433 A.2d at 302.[3] In articulating this limitation, we have stated that because the probate division "has a special and limited jurisdiction given by statute . . . if it appears on the face of the proceedings that it has acted in a manner prohibited or not authorized by law, its orders and decrees are absolutely void and may be treated as a nullity." In re Prudenzano's Will, 116 Vt. 55, 60, 68 A.2d 704, 708 (1949). But Paul reads too much into this language in asserting that the reference to "the face of the proceedings" renders the probate division's initial characterization of its actions dispositive as to the existence of subject-matter jurisdiction. Id.

¶ 23. The language Paul relies on is often repeated in our early probate cases. See, e.g., Roddy v. Fitzgerald's Est., 113 Vt. 472, 475, 35 A.2d 668, 670 (1944) (explaining that probate

---

[3] We note that Paul mischaracterizes In re Proctor in claiming that this Court held there that "the probate court lacked jurisdiction to adjudicate fiduciary misconduct." The question presented in Proctor was whether a previous version of Vermont's trust code authorized the probate division to require a beneficiary of a charitable bequest to account for funds paid to it by the trustee of the involved estate. We explained that the statute in effect at the time vested the probate division with authority to "oversee[] the affairs of officials, such as testamentary trustees and executors, appointed by the court itself, and property in the trustees' hands." Proctor, 140 Vt. at 9, 433 A.2d at 302. Thus, the probate division could order an accounting from the trustee it had appointed, but lacked jurisdiction to demand an accounting from a beneficiary to determine how the beneficiary used funds paid to it by the trustee—even though the beneficiary had a fiduciary duty to use the funds as directed by the settlors of the trust. Id. at 8-9, 433 A.2d at 302-03 (explaining that enforcement of beneficiary's fiduciary duties "invokes a purely equitable claim independent of the trustee's duties"). In this case, the probate division appointed Paul to act as Miriam's guardian, and the question was whether his failure to fulfill his corresponding fiduciary duties resulted in losses to the estate. Proctor does not speak to any limitation in the power of the probate division to regulate the conduct of a fiduciary it appointed within the very proceeding in which that appointment was made. Id. at 9, 433 A.2d at 302 (concluding that statute "allows a probate court to invoke certain equitable remedies required to deal adequately with those matters properly before it," including supervision of court-appointed fiduciaries and property in their hands).

division's orders are void where "it appears on the face of the proceedings" that the court acted in manner not authorized by law); Barber v. Chase, 101 Vt. 343, 351, 143 A. 302, 305 (1928) (same); Prob. Ct. v. Winch, 57 Vt. 282, 285 (1884) (same). This phrasing traces back to Massachusetts case law: in our 1828 decision Hendrick v. Cleaveland, we cited the Massachusetts Supreme Judicial Court's decision in Hunt v. Hapgood for the proposition that where "it appeared on the face of the proceeding that the [probate] court exercised a power not given by law, and the defect could not be cured by the allegation or proof of any facts whatever, the proceeding was . . . absolutely void." Hendrick v. Cleaveland, 2 Vt. 329, 337 (1828) (emphasis added) (citing Hunt v. Hapgood, 4 Mass. 117, 121-22 (1808)). Understood in this broader context, it is apparent that our early references to "the face of the proceedings" do not create a standard by which the existence of subject-matter jurisdiction is determined by the probate division's original characterization of its actions. Rather, it is merely a reference to the well-established principle discussed above: the probate division is a court of limited jurisdiction, and thus its jurisdiction is not presumed but "must be made affirmatively to appear by one who seeks to take advantage of its proceedings." Prudenzano's Will, 116 Vt. at 60, 68 A.2d at 708. While it "ought to . . . appear[] on the face of [a] decree" that the probate division is "exercising [its] power in a case to which it extended," if such facial defect exists, the true question is whether it can be "cured by the allegation or proof of any facts whatever." Hunt, 4 Mass. at 121-22; see Town of Brighton v. Town of Charleston, 114 Vt. 316, 331, 44 A.2d 628, 637 (1945) (observing that in courts of limited jurisdiction, including the probate courts, "nothing will be presumed in favor of their jurisdiction, but the facts necessary to confer it must affirmatively appear from the record, and the exercise of jurisdiction does not imply a previous ascertainment of those facts").

¶ 24. Moreover, while Paul frames the jurisdictional inquiry as binary in nature, Vermont law does not support the proposition that any characteristics a probate action may share with a civil claim place that matter within the exclusive jurisdiction of the civil division. See, e.g., 4

10

V.S.A. § 35(17) (providing that probate division "shall have jurisdiction of . . . civil actions brought under 18 V.S.A. chapter 107, subchapter 3, relating to disposition of remains" (emphasis added)). For example, we recently adopted the "probate-exhaustion rule," pursuant to which a civil tort claim for intentional interference with expectation of inheritance " 'is not available to a plaintiff who had the right to seek a remedy for the same claim in a probate court' " but failed to do so. Dewdney v. Duncan, 2025 VT 26, ¶¶ 10, 13, __ Vt. __, 342 A.3d 818 (quoting Restatement (Third) of Torts: Liab. for Econ. Harm § 19(2) (2020)). We took this approach to: "aid the efficiency of probate courts in deciding matters within their specialized knowledge in a timely manner"; "avoid interference with ongoing probate proceedings while also preventing parties from circumventing the probate courts and litigating what are clearly probate issues before the general trial courts"; "reduce the possibility of inconsistent judgments"; and "respect[] the legislative decision to carve out probate-specific remedies and jurisdiction." Id. ¶ 13. We rejected the plaintiffs' argument that they did not have a right to make their claim in the probate division because they were "seeking a remedy for defendant's undue influence, duress, and fraud" in inducing the settlor to amend the trust, and explained that, despite this framing, the plaintiffs' "challenge to the trust amendment implicates the administration of the trust." Id. ¶ 16. Similarly, in In re Estate of Piche, we concluded that the probate division had jurisdiction to determine title to a disputed account within the context of an estate proceeding, reasoning that a contrary conclusion "would deprive the probate court of the ability to function efficiently and effectively" and force parties to litigate contested matters in the civil division, thereby prolonging the resolution of the probate process and increasing its cost. 166 Vt. 479, 483-84, 697 A.2d 674, 677 (1997) ("We decline to complicate the probate process by precluding the probate court from deciding matters that are necessary and incidental to the effective administration of estates."); see also In re Allen's Est., 129 Vt. 107, 110, 272 A.2d 130, 132 (1970) (observing that probate courts generally

11

have jurisdiction to determine title to real property where "such question arises collaterally as a necessary incident to the determination of other matters within the probate jurisdiction").

¶ 25. This case law demonstrates that the existence of subject-matter jurisdiction does not turn on how the probate division initially characterized its actions or the degree of subject-matter overlap the issues presented may share with civil claims. Rather, the question is whether the probate division's exercise of authority was within the scope of its jurisdictional grant. Because the probate division's jurisdiction "is shaped by the legislature, subject matter jurisdiction is a question of statutory interpretation." In re C.L.S., 2021 VT 25, ¶ 10, 214 Vt. 379, 253 A.3d 443 (quotation omitted). We therefore begin our inquiry on this point by surveying the statutes setting forth the probate division's jurisdiction with respect to guardianships in order to determine whether the proceedings and order fell within the scope of the "special and limited jurisdiction given by statute." Prudenzano's Will, 116 Vt. at 60, 68 A.2d at 708.

¶ 26. As always, our primary goal in interpreting these statutes is to effectuate the Legislature's intent. Shires Hous., Inc. v. Brown, 2017 VT 60, ¶ 9, 205 Vt. 186, 172 A.3d 1215. To accomplish this, we look first to the plain language of the provisions at issue, presuming that the Legislature intended the ordinary meaning of the words it selected. Id. If the Legislature's intent is apparent on the face of the statutory language, our inquiry is at its end, and we enforce the provision according to its terms. T.C. v. L.D., 2020 VT 19, ¶ 4, 211 Vt. 582, 229 A.3d 77; see also In re Bennington Sch., Inc., 2004 VT 6, ¶ 12, 176 Vt. 584, 845 A.2d 332 (mem.) ("The definitive source of legislative intent is the statutory language, by which we are bound unless it is uncertain or unclear."). Only where the statutory language gives rise to ambiguity or uncertainty will we resort to canons of statutory construction to ascertain the underlying legislative intent. Shires Hous., 2017 VT 60, ¶ 9.

¶ 27. Chapter 111 of Title 14 pertains to guardianships. 14 V.S.A. §§ 2602-3098. It expressly vests the probate division with "exclusive original jurisdiction over all proceedings

12

brought under the authority of this chapter." Id. § 3062(b); see also id. § 3026(a) (stating that probate division also has "exclusive jurisdiction" over guardianship proceedings properly heard in Vermont under Uniform Adult Guardianship and Protective Proceedings Jurisdiction Act). It also provides that the probate division "by which a guardian is appointed shall have jurisdiction of the estate of the ward and shall alone be authorized to license the sale of the estate and settle the guardian's account." Id. § 2602 (emphasis added). As relevant here, the Legislature further specified that the probate division "shall have supervisory authority over guardians." Id. § 3062(c).

¶ 28. Where the power of financial guardianship is involved, a guardian has a fiduciary duty to "manage the estate of his or her ward frugally and without waste and in a manner most beneficial to the ward." Id. § 2797. The guardian "shall always serve the interests of the person under guardianship and shall bring any potential conflicts of interest to the attention of the [probate] court." Id. § 3071(c). The guardianship chapter sets forth numerous mechanisms by which the probate division supervises a guardian's compliance with these fiduciary duties.

¶ 29. Among other things, the guardian must "annually account to the [probate] court for the proceeds and expenditures of the ward's estate, together with an account of the guardian's fees" in accordance with the Vermont Rules of Probate Procedure. Id. § 2602; see also id. § 3076(a) ("The guardian shall file an annual report with the appointing court within 30 days of the anniversary date of the appointment."); V.R.P.P. 66(c) (setting forth procedural requirements for guardian's accounts). Where an objection is made to the allowance of an account, the probate court "shall examine every guardian upon oath as to the truth and correctness of an account before the same is allowed by the court." 14 V.S.A. § 2925. "Any interested person" may invoke the probate division's supervisory authority over guardians by filing a motion with the court "seek[ing] review of a guardian's proposed or past actions." Id. § 3062(c); see also id. § 3061(5) (defining "interested person" to include "near relative[s]"); id. § 2927 ("After the trust of a guardian is

13

terminated, if the ward or the ward's legal representatives are dissatisfied with the account as allowed by the Probate Division . . . during the continuance of the trust," ward or representatives may, within limitations period, move "to reopen the estate for a reexamination of the account").

¶ 30.    Moreover, as was the case here, "any person interested in the welfare of the person under guardianship" may move in the probate division for termination or modification of the guardianship.  Id. § 3077(a).  Grounds for termination or modification include the guardian's failure to file timely annual reports or to act in accordance with a probate division order, as well as a change in the capacity or suitability of the guardian to carry out their powers and duties.  Id. § 3077(a)(2), (3), (5).  Probate Rule 67(b) sets forth the procedure to be followed "[w]hen it appears to the court that a fiduciary has failed to comply with procedures required by law or court rule, or that the [guardianship] estate . . . is not being promptly and properly administered."[4] V.R.P.P. 67(b); see also 14 V.S.A. § 3077(c) (requiring notice and hearing in accordance with 14 V.S.A. § 3064, which in turn requires compliance with the Rules of Probate Procedure).

¶ 31.    At the termination of a financial guardianship, the guardian must "render a final accounting."  14 V.S.A. § 3076(c).  The guardian "shall render and settle with the Probate Division of the Superior Court his or her account of the property of his or her ward, including the income and proceeds of the sale of his or her personal and real estate," and "pay over and deliver to persons entitled to the same the estate and effects remaining in his or her hands, or due from him or her on

---

[4] Paul is correct that Probate Rule 67 does not play a role in our jurisdictional analysis. Although our procedural rules have the force and effect of law, they cannot " 'abridge, enlarge[,] or modify any substantive rights of any person provided by law.' " Samis v. Samis, 2011 VT 21, ¶ 11, 189 Vt. 434, 22 A.3d 444 (quoting 12 V.S.A. § 1) (holding that trial court erred in construing procedural rule to allow guardian to initiate divorce on behalf of ward where that power was not granted by guardianship statute); cf. In re Willey, 2010 VT 93, ¶¶ 17-18, 189 Vt. 536, 14 A.3d 954 (mem.) (concluding that rule of civil procedure allowing appointment of guardian ad litem for minor litigants did not allow civil division to create financial guardian and engage in "long-term supervision of that fiduciary" and noting that this is "exactly the supervision" that Legislature "entrusted to the probate court").  Rule 67 sets forth the procedural requirements for the probate division's exercise of supervisory authority over guardians, but we look to the relevant statutes to determine the scope of that authority in the first instance.

such settlements." Id. § 2921. The definition of "settle" includes "[t]o ascertain (a balance due, an amount owed, etc.)" and "[t]o put in order; esp., to deal with all the details of a business or of someone's money or property so that nothing remains to be done." Settle, Black's Law Dictionary (12th ed. 2024) (emphasis added). When this is accomplished and "proved to the satisfaction of the court," "the account shall be allowed as [the guardian's] final discharge and ordered to be recorded." 14 V.S.A. § 2107.

¶ 32. From this structure, we draw a few general principles that aid our subsequent analysis. The Legislature granted the probate division broad supervisory powers over the guardians it appoints. These powers may be invoked on motion of an interested party, but they can also be exercised on the probate division's initiative. They do not terminate with the removal of the guardian; rather, the guardian is not discharged until the guardian's accounts have been settled by the probate division. In addition, not all statutes describing the scope of the probate court's authority with respect to guardianships are contained within chapter 111. Some are enumerated with respect to fiduciaries generally. For example, the procedures for discharge of a guardian—which likewise apply to the discharge of an executor, administrator, or trustee—are located in chapter 101 of Title 14, which pertains to probate bonds generally. 14 V.S.A. § 2107.

¶ 33. The evidentiary hearing the probate division held in 2020 centered on its supervision of Paul, in his role as guardian, in his compliance with the fiduciary responsibilities set forth by statute. We cannot agree with Paul's contention that those proceedings were in no way an accounting.[5] The court reopened the accountings that had been previously allowed and

_____

[5] In connection with his argument that the probate division proceedings were, in essence or effect, a civil damages trial, Paul asserts in passing that he was denied various procedural rights that would have been afforded in an independent civil proceeding, including the rights to a jury trial and an initial pleading providing adequate notice of the claims against him and the capacity of the parties pursuing them. To the extent Paul seeks to raise a freestanding due-process claim in relation to these subsidiary arguments, he has neither made the requisite showing that this issue was preserved for our review nor engaged with the applicable, case-specific legal standard. See V.R.A.P. 28(a)(4)(A) (requiring that appellant's principal brief include, among other things, an

15

took up those that remained pending, including Paul's final accounting. In doing so, it passed on Paul's requests for fees thereunder. Its analysis was shaped by and repeatedly referred to those accountings and the information that was—or should have been—offered in support. We therefore reject Paul's contention that the probate division exceeded the scope of its broad supervisory authority in conducting the 2020 hearings. The remaining question, then, is whether requiring Paul to reimburse the estate was a valid exercise of the probate division's authority.

¶ 34. We turn to 14 V.S.A. § 917, a provision both the probate and civil divisions interpreted as vesting the probate division with authority to issue the reimbursement order. Section 917 provides, in full, as follows:

> The Probate Division of the Superior Court shall regulate the conduct of persons appearing in proceedings or involved in the administration of estates <u>or other matters within the court's jurisdiction</u>. When it appears to the court that a person has failed to comply with procedures required by law or the Rules of Probate Procedure, or that an estate is not being promptly and properly administered, or that a fiduciary is incapable or unsuitable to discharge the trust, the court may give notice of the complaint or omission together with a notice to correct the deficiency or complaint within a specified period of time or cause the party to appear and answer the matter. Notice shall be given as provided by the Rules of Probate Procedure. The court may restrain a person from performing specified acts or the exercise of any powers or discharge of any duties of office, or make any other order to secure proper performance of duty. <u>It may exercise the powers of contempt; tax costs, including surcharge; order a party to pay to other parties the amount of reasonable expenses, including reasonable attorney's fees, or losses incurred because of an act or omission; and remove or suspend a fiduciary</u>.

14 V.S.A. § 917 (emphases added).

<hr />

argument containing "the issues presented, how they were preserved, and appellant's contentions and the reasons for them—with citations to the authorities, statutes, and parts of the record on which the appellant relies"); see also <u>Bandler v. Cohen Rosenthal & Kramer, LLP</u>, 2015 VT 115, ¶ 13, 200 Vt. 333, 131 A.3d 733 ("Due process is flexible and calls for such procedural protections as the particular situation demands." (quotation omitted)). We therefore decline to address any such argument as inadequately briefed. <u>State v. Bergquist</u>, 2019 VT 17, ¶ 64 n.13, 210 Vt. 102, 211 A.3 946 ("We will not consider issues, even those of a constitutional nature, that are insufficiently raised and inadequately briefed.").

16

¶ 35. Paul contends that § 917 does not apply here. He points out that § 917 is located in chapter 61 of Title 14, which contains provisions that apply to executors or administrators of a decedent's estate. He argues that, had the Legislature intended that § 917 apply to guardianships, it would have been located in chapter 111.[6]

¶ 36. Again, in interpreting statutory provisions, we must "begin with the plain language . . . and, if possible, resolve any questions on this basis alone." Clark v. DiStefano, 2018 VT 82, ¶ 8, 208 Vt. 139, 195 A.3d 379. Paul's argument fails to engage with the plain language of § 917. Two key aspects of that provision unambiguously reflect that the powers granted thereunder include the supervision of guardians.

¶ 37. First, § 917 extends the regulatory powers described therein to persons appearing in probate proceedings or involved in the administration of estates "or other matters within the court's jurisdiction." Those "other matters" unequivocally include guardianships: as set forth above, the probate division has "exclusive original jurisdiction" over guardianship proceedings, including "supervisory authority over guardians." Id. § 3062(b)-(c). We presume that the Legislature inserted the statutory language referring to "other matters" within the probate division's jurisdiction "advisedly, and with intent that it should be given meaning and force," and therefore will not construe that language "in a way that renders a significant part of it pure surplusage." State of Vt. Agency of Nat. Res. v. Parkway Cleaners, 2019 VT 21, ¶ 24, 209 Vt.

---

[6] Paul also points to In re Estate of Hogg, where we stated that "[t]he statutory authority for removal of an executor is set forth in 14 V.S.A. § 917." 147 Vt. 101, 104, 510 A.2d 1323, 1325 (1986), overruled on other grounds by Staruski v. Cont'l Tel. Co. of Vt., 154 Vt. 568, 571 n.3, 581 A.2d 266, 267 n.3 (1990). Our recognition that the statute gives the probate division authority to take a given action, however, is not a conclusion that the provision affords no power for the court to undertake alternative actions. In any event, § 917 no longer contains the language quoted in Estate of Hogg. Hogg, 147 Vt. at 104, 510 A.2d at 1325 (quoting language no longer present in 14 V.S.A. § 917); see 1985, No. 144 (Adj. Sess.), § 41 (adopting amended statutory language containing no reference to "executor or administrator").

620, 210 A.3d 445 (quotations omitted). To read the statute as Paul proposes would render the reference to other matters within the probate division's jurisdiction "pure surplusage." Id.

¶ 38.    Second, in describing the scope of the probate division's authority, § 917 refers to complaints regarding the conduct of "a fiduciary" and the power to "remove or suspend a fiduciary." A guardian is a fiduciary. CitiFinancial, Inc. v. Balch, 2013 VT 86, ¶ 32, 195 Vt. 21, 86 A.3d 415 (holding that reference to " 'fiduciaries' " in Title 14 "include[s] guardians"). If, as Paul argues, the Legislature intended to limit the probate division's exercise of the regulatory powers enumerated in § 917 to executors and administrators, it could have specified that it was referencing a more limited class of fiduciaries—as it has done elsewhere in Title 14. See Daniels v. Vt. Ctr. for Crime Victims Servs., 173 Vt. 521, 523, 790 A.2d 376, 379 (2001) (mem.) ("Where the Legislature has demonstrated that it knows how to provide explicitly for the requested action, we are reluctant to imply such an action without legislative authority."); see also, e.g., 14 V.S.A. § 2751 ("guardian" to give bond); id. § 906 ("executor or administrator" to give bond); id. § 922 ("conservator" may be required to post bond); 14A V.S.A. § 702 ("trustee" to give bond where required). Instead, the Legislature chose to use the broader umbrella term "fiduciary." Again, we must assume that it did so advisedly, and with intent that this language "be given meaning and force." Parkway Cleaners, 2019 VT 21, ¶ 24 (quotation omitted).

¶ 39.    Thus, if we give the language of § 917 its ordinary meaning, the regulatory powers it confers on the probate division extend to guardians, and therefore authorize the issuance of the probate division's judgment order requiring Paul to repay the estate.[7] In drawing this conclusion,

---

[7] Paul briefly contends that even if § 917 applies to guardians, the powers enumerated therein are to be exercised to "secur[e] proper performance of duty," and that it therefore does not allow for an award to "aggrieved parties after a fiduciary has been removed and is no longer subject to supervision by the court." He argues that the hearings, coming years after Paul's removal and Miriam's death, were beyond the probate division's jurisdiction. But while Paul had been removed as guardian, the probate division had pending before it his motions to allow each of his annual accounts, and he had not been discharged. That § 917 authorizes the probate division to act in such circumstances is consistent with our longstanding understanding of guardianships. A

18

we acknowledge that it is not necessarily intuitive that a provision granting the probate division authority to regulate the conduct of all fiduciaries—including guardians—would appear in a chapter titled "Executors and Administrators." See 14 V.S.A. §§ 902-966. But even assuming for the sake of argument that this alone rendered the plain language of the statute ambiguous, we would not accept Paul's proposed construction of § 917 as implicitly limited to the probate division's regulation of executors and administrators. See Conn v. Town of Brattleboro, 120 Vt. 315, 320, 140 A.2d 6, 9 (1958) (holding that only where statutory language "creates a doubtful meaning" may "the true meaning . . . be ascertained by consideration of its policy and purpose with reference to all of its provisions, its title, pre-existing legislation on the subject and other circumstances indicative of the [Legislature's] intent").

¶ 40.    Our survey and discussion of Vermont's guardianship statutes in CitiFinancial, Inc. v. Balch is instructive here. 2013 VT 86, ¶¶ 2-15, 27-39. In that case, a ward and his guardian executed a promissory note in the plaintiff's favor refinancing a mortgage on the ward's property. The plaintiff later sought to foreclose, and we held that the mortgage deed was ineffective because the guardian failed to obtain a license from the probate division to mortgage the ward's property as required under 14 V.S.A. § 2201. Id. ¶ 27. In doing so, we observed that § 2201, while cross-referenced in chapter 111, was contained elsewhere in Title 14, which "could lead to it being overlooked." Id. ¶ 15. We explained, however, that "[t]he Legislature made numerous changes to the guardianship laws in 1979," and "[n]otwithstanding the[se] changes . . . or perhaps because of them, Title 14 is confusing in many respects and it contains provisions that are potentially contradictory." Id. ¶¶ 4, 13. Because these "amendments and additions to the law governing

---

guardian's power ceases upon their removal or the death of the ward, but these events do not extinguish the probate division's jurisdiction to settle the guardian's accounts. Cf. Fletcher v. Fletcher, 29 Vt. 98, 101-02 (1856) (holding that while guardians' powers ceased upon ward's death, "it does not follow that that event determined [guardians'] right and interest in this [promissory] note which they had taken, and for the amount of which they were responsible on the settlement of their account as guardians").

guardianships do not appear to have addressed all statutes pertaining to the powers and duties of guardians[,]" the "[o]lder statutes that remain compete with the more recent amendments" and "[t]he result is a hodgepodge." Id. ¶ 13 (observing, by way of example, that "14 V.S.A. § 2798 remains essentially as it was in 1797" but "now seems to be encompassed by 14 V.S.A. § 3069(c)(3)"). In other words, given the history and structure of Vermont's statutory provisions pertaining to guardianship, it is not unusual that a provision relating to guardianship might not be located in chapter 111.

¶ 41.    We note, moreover, that chapter 111 makes several references to the provisions of Title 14 governing the settlement of estates. It provides that "[a] guardian shall account for and dispose of the personal estate of his or her ward, as administrators account for and dispose of personal estate in the settlement of estates." 14 V.S.A. § 2793. It further specifies:

> If a guardian, ward, creditor or heir apparent of a ward files a motion complaining to the Probate Division . . . that a person is suspected of having concealed, embezzled, or conveyed away money, goods, or chattels of the ward, or that such person has possession or knowledge of deeds or other writings that would furnish evidence of a right, title, interest, or claim of the ward in or to real or personal estate, the court may cite that person to appear before it to be examined on oath upon the matter.

Id. § 2794. "Such citation shall issue and costs be taxed, as provided in case of similar citations in the settlement of estates." Id. § 2796. While the statute could be more explicit, it is difficult to understand how this is not a reference to § 917, which expressly refers to the power to "tax costs." Here, as in CitiFinancial, the fact that § 917 is not located in the guardianship chapter may "highlight the need for legislative clarification of the laws governing guardianships," but given the plain language, statutory cross-reference, and other considerations set forth below, does not foreclose a conclusion that it nonetheless pertains to guardians. 2013 VT 86, ¶ 15.

¶ 42.    Lastly, to accept Paul's constrained reading of § 917 would be wholly at odds with the Legislature's demonstrated intent with respect to the probate court's broad jurisdiction over

guardianships and powers of supervision over guardians. We construe Vermont's guardianship statutes with fidelity to their "animating purpose." Guardianship of C.H., 2018 VT 76, ¶ 13 (rejecting narrow reading of standing provision because it would frustrate purpose of guardianship statutes to conclude that "a developmentally disabled person without near relatives, who has no relationship with a public official, social worker, or clergy," is "out of reach of the guardianship statutes because no one has standing to petition for appointment of a guardian" (quotation omitted)). As we recognized in Boisvert v. Harrington, "in appointing a guardian the court assumes the primary responsibility to protect" the ward. 173 Vt. 285, 289-90, 796 A.2d 1102, 1106 (2002) (observing that in Vermont, "as in most states, the probate court essentially exercises a continuing jurisdiction over both the guardian and the ward"). Indeed, " '[i]n reality the court is the guardian; an individual who is given that title is merely an agent or arm of that tribunal in carrying out its sacred responsibility.' " Id. at 290, 796 A.2d at 1106 (quoting Kircherer v. Kircherer, 400 A.2d 1097, 1100 (Md. 1979)) (collecting cases). The guardianship statutes are, on their face, consistent with our longstanding recognition that "[t]he power to settle guardians' accounts is vested in the probate court" and that that court "has all the authority necessary to protect all the rights, and secure all the interests, of all parties interested." Waterman v. Wright, 36 Vt. 164, 169 (1863); see also Hendee v. Cleaveland, 54 Vt. 142, 147-48 (1881) (holding that "guardian in respect to his wards' estate stands in the position of a trustee, answerable to his wards for all advantage made by or through the estate; and accountable for all waste or deterioration traceable to his default" and concluding that probate court properly charged former guardian for wards' funds invested in real estate plus interest). Even assuming there was an ambiguity, we would not interpret language of uncertain meaning to divest the probate court of those traditional powers necessary to carry out its "primary responsibility to protect" the ward. Boisvert, 173 Vt. at 289-90, 796 A.2d at 1106; cf. Dewdney, 2025 VT 26, ¶ 16; Est. of Piche, 166 Vt. at 483-84, 697 A.2d at 677.

21

¶ 43. In this context, it is apparent that Paul's contention that the procedures for prosecution of a bond set forth at 14 V.S.A. § 2108 expressly demonstrate that the civil division is the proper venue to pursue damages claims cannot carry the day. Section 2108 allows "[a] person claiming to be injured by a breach of the condition of a bond" to—upon the provision of their own bond—obtain the probate division's permission to prosecute the guardian's bond in the civil division. 14 V.S.A. § 2108(1)-(9). The bond-prosecution process, however, cannot be used by the probate division to carry out its supervisory responsibilities over guardians: only "[a] person claiming to be injured by a breach of the condition of a bond" may initiate proceedings to prosecute the bond. Id. § 2108(1). As we explained in Probate Court v. Brainard, the probate division "cannot, voluntarily, move in the prosecution of the defendants for a breach of the conditions of their bond"; rather, "[t]he prosecutor, and not the Probate Court, must take, and be entitled to take, this step." 48 Vt. 620, 624-26 (1876); see also Prob. Ct. v. Sawyer, 59 Vt. 57, 60, 7 A. 281, 282 (1886) (recognizing that bond statute does not allow probate court to prosecute bond on its own motion, rather, prosecution must be initiated by one who has right to do so under statute). Indeed, the statute mandates that the probate division grant permission to prosecute a bond to any person claiming to have been injured by a breach of its conditions, provided that person gives "a bond to the satisfaction of the court, to prosecute the suit to effect and pay such costs as shall be adjudged against him in case he fails to recover." Brainard, 48 Vt. at 625; see also 14 V.S.A. § 2108(2). As a result, "[t]he Probate Court, in granting such permission, except in determining the amount and sufficiency of the bond required from the prosecutor, acts in a ministerial rather than in a judicial capacity." Brainard, 48 Vt. at 625. Again, we will not construe Title 14 to leave the probate division powerless to protect the estate of an individual it has placed under guardianship. See Boisvert, 173 Vt. at 289-90, 796 A.2d at 1106.

¶ 44. Lastly, we note that the cases from other jurisdictions that Paul points to have no bearing on our analysis. The cases Paul cites apply Maine, California, Connecticut, and Tennessee

22

law to proceedings not analogous to those at issue here. See Voisine v. Tomlinson, 2008 ME 133, ¶¶ 11-12, 955 A.2d 748 (holding that district court erred in deferring jurisdiction of civil claims against personal representative of estate for breach of fiduciary duty and wrongful interference with expectation of inheritance to probate court because while claims "may eventually relate to the settlement of [decedent's] estate," probate court, under Maine law, lacked jurisdiction over tort claims for money damages sought in jury trial); In re Breslin's Est., 66 P. 962, 962-63 (Cal. 1891) (holding that probate court could allow or reject expenditures in settling guardian's account but had no jurisdiction under California statute to resolve alleged third-party creditor's claim against ward's estate where contested by guardian), overruled in relevant part by, Guardianship of Gestner's Est., 204 P.2d 77, 80-81 (Cal. Ct. App. 1949) (recognizing that rationale in Breslin was abridged by subsequent passage of statute giving California probate courts jurisdiction to settle claim against ward's estate which guardian contests as invalid); Ramsdell v. Union Tr. Co., 519 A.2d 1185, 1193-94 (Conn. 1987) (concluding that beneficiaries' claims for money damages and equitable relief arising from alleged negligence of executor of decedent's will in its dual role as administrator of decedent's inter vivos trust should be brought in court of general jurisdiction under Connecticut law); Geremia v. Geremia, 125 A.3d 549, 560-61, 563 (Conn. App. Ct. 2015) (explaining that civil court erred, under Connecticut law, in concluding that it lacked subject-matter jurisdiction over claims related to management of estate assets under "primary jurisdiction doctrine"); Barnes v. Brandrup, 506 F. Supp. 396, 402 (S.D.N.Y. 1981) (surveying limitations of probate court jurisdiction under Connecticut law); Monteverde v. Christie, 134 S.W.2d 905, 910-11 (Tenn. Ct. App. 1939) (holding that Tennessee law did not give probate court jurisdiction over action which was "in reality in the nature of an action in tort for the wrongful diversion by the Guardian of the trust funds in her hands" because it was without power to reopen annual settlements). Because the Vermont probate division's jurisdiction is set by statute, cases from other jurisdictions are persuasive only to the extent they interpret similar statutory language. To

the extent those cases suggest a contrary result, they turned on the absence of a statutory authorization which, we have already concluded, the Vermont Legislature saw fit to provide.

¶ 45.     On these grounds, we affirm the civil division's denial of Paul's motion to dismiss and remand the matter to that court for such further proceedings as may lay in the intermediate appeal.  Because we conclude that 14 V.S.A. § 917 vested the probate division with all authority necessary to order Paul to repay the estate for losses incurred as a result of his conduct while serving as financial guardian, we do not reach his argument that the probate division erred in grounding some portion of that authority in the Restatement (Third) of Trusts § 100.  Similarly, we do not address the estate's alternative contention that the challenged actions were a valid exercise of the probate division's equitable authority.

The civil division's order denying the motion to dismiss for lack of subject-matter jurisdiction is affirmed and the action remanded to the civil division for further proceedings.

FOR THE COURT:

_____

Associate Justice