Filed 05/26/26



| VERMONT SUPERIOR COURT | CIVIL DIVISION |
|---|---|
| Washington Unit | Case No. 24-CV-03053 |
| 65 State Street | |
| Montpelier VT 05602 | |
| 802-828-2091 | |
| www.vermontjudiciary.org | |

In re: Virginia Black

## DISMISSAL

The matter before the Court is a limited civil appeal on the award of fees and expenses to a former guardian. This appeal is a small portion of a 10-year, highly contested, probate guardianship case. Following certain admissions made by Appellant Elizabeth Black, the Court finds that there is no dispute or reason for a final hearing in this matter, and the appeal is **Dismissed** as a matter of law.

**Background**

In 2016, some of Virigina Black's children sought a guardianship for their mother arising from concerns about her health and capacity. At the time, Viriginia was living in Barre, Vermont with her adult daughter Elizabeth and her adult son Jonathan. Virginia's other daughter,[1] Deborah Black, filed the petition, and the probate division appointed her as the first guardian. Deborah resigned approximately 17 months into the role. Since her resignation, the probate division has appointed a succession of guardians, including Susan Buckholz, who served from October 3, 2018 until March 20, 2023. Currently, Attorney Paula McCann is serving as Virigina's attorney, David Black is serving as a financial guardian, and Deborah is serving as her mother's guardian for medical decisions.[2] Virginia, who is 99 years old, is presently residing in

---

[1] Due to the fact that all of the family members in this case have the same last name, the Court will use their first names to identify those involved. This is done for purposes of convenience and clarity but intends no disrespect to those parties.

[2] There is a pending motion filed on March 5, 2026 by Deborah to appoint herself and David as co-guardians for Virginia.

a long-term nursing care facility in St. Johnsbury after suffering a break to her pelvis following a fall.

Elizabeth Black has not only opposed the guardianship, but she has filed opposition motions and appeals to nearly every substantive decision that both Deborah and the successor guardians have made on Virginia's behalf. Elizabeth has argued for the past 10 years across multiple motions and filings that her mother does not need a guardian, that her mother should reside with Elizabeth, and that her other siblings, enabled by their attorneys, have made false statements to the Court and to each other in an effort to control Virginia. Elizabeth posits herself as the sole truthteller in this network of family and providers. She regularly casts herself as the only party who is fighting to promote Virginia's true intentions and wishes. Yet, at no time during these proceedings has Elizabeth had the right or authority to represent her mother. Her only legal role has been interested party. While she has made filings purporting to be on her mother's behalf, the court has not recognized these efforts and has relied upon Virginia's duly appointed guardians, attorneys, and guardian ad litems. Despite these rulings, Elizabeth has been unrelenting, even if largely unsuccessful, in her efforts.

**Scope of the Present Appeal**

The present appeal arises from the probate division's June 6, 2024, decision awarding fees to Susan Buckholz for her work as Virginia's guardian from January 1, 2020 to April 3, 2023.[3] The total amount of these fees is $42,855. They are supported by 18 pages of billing records produced by Ms. Buckholz and examined by the probate division.

At a hearing in review of these items, the probate division made the following findings:

> The novelty and difficulty of administering this guardianship during the period of Guardian Buckholz' billing warranted the time billed and the rate charged. The acceptance of the role of guardian and the hearings involved precluded guardian from other employment. The rates charged by Guardian Buckholz were reasonable. Given the hostile environment in which she worked, Guardian Buckholz performed her role as guardian reasonably and in the best interest of Virginia Black. Guardian Buckholz' itemization of her fees is consistent with the loadstar number.

---

[3] In an earlier decision, the probate division approved Ms. Buckholz's pre-2020 billings. Following an appeal from Elizabeth, these billings were affirmed by the civil division in *Black v. Black*, Dckt. No. 164-4-20 Wncv (Dec. 28, 2021).

2

*In re Virginia Black*, Dckt. No. 68-2-16 Wnpr, at 4 (Jun. 6, 2024). The probate division confirmed and allowed Ms. Buckholz's fees in full. The Court understands that this decision discharged Ms. Buckholz, and it is the Court's understanding that the probate division has released Ms. Buckholz from her bond.[4]

On July 8, 2024, Elizabeth appealed this decision. On November 1, 2024, she filed a statement of questions to define her appeal as required under Rule 72 of the Vermont Rules of Civil Procedure.[5] These questions for appeal include:

1. Should Virginia Black be forced to pay a guardian for dishonest activities?
2. Should Virginia Black be forced to pay a guardian for activities which violate the letter or the spirit of Vermont law?
3. Should Virginia Black be forced to pay a guardian for activities which accrue to no benefit to her?
4. Was the April 10, 2024 Probate hearing valid?

The probate division has the authority to review a guardian's final fees under 14 V.S.A. §§ 917, 3076. *In re Thomas*, 2026 VT 12, ¶¶ 32, 37–39. The determination of a fiduciary's fees is governed, in part, by Rule 66(d) of the Vermont Rules of Probate Procedure. This provision states that "Any other attorney's fees or fees of a fiduciary other than a trustee shall be justified in terms of the factors for determining the reasonableness of a fee contained in Rule 1.5(a) of the Vermont Rules of Professional Conduct." VR.P.P. 66(d)(3). This examination largely centers on questions of reasonableness of the fees and the amounts charged. Vt. Rules of Prof. Conduct ¶ 1.5(a).

What is not part of the probate court's June 6th decision, and by extension, this appeal, is Susan Buckholz's role as Guardian for Virginia. On January 27, 2023, Ms. Buckholz filed a motion, separate and apart from her later accounting, requesting to be removed and discharged as Guardian. Neither Elizabeth, nor any other party, objected to this motion, and on March 20, 2023, the probate division granted her motion to withdraw, subject only to Ms. Buckholz filing a final accounting, which was filed on April 4, 2023.[6] By discharging Ms. Buckholz as a guardian

---

[4] At the May 18th hearing, Attorney McCann represented that Ms. Buckholz had been paid her fees by the Guardian, and that she had retired from the practice of law and closed her office in Quechee, Vermont.

[5] Virginia's attorney and other interested parties challenged the timeliness of this appeal in a motion to dismiss, which the Court denied on November 5, 2024.

and as someone subject to the probate division's authority, the time to review the nature of Ms. Buckholz's actions has passed, except for the specific billings that remain before the Court. *In re Thomas*, 2026 VT 12, ¶¶ 12, 29, 32, 39 (describing the probate court's original jurisdiction to oversee and manage guardians, including the right to award damages from a guardian who harms the ward's estate).

Given that Elizabeth has not challenged Ms. Buckholz's discharge as guardian and has only brought an appeal on the fees, the Court understands the nature and substance of this appeal to be limited to the question of whether Ms. Buckholz's billings before the Court were reasonable and allowable under 14 V.S.A. § 3076 and Rule 66(d)(3).

## Procedural History of Present Appeal

This appeal has been characterized by Elizabeth Black's contentious litigation posture, which has marked the entire probate guardianship and its various appeals.[7] Across multiple filings, Elizabeth has attacked the actions and intent of nearly every party, judge, and attorney involved in this case. Much of this appears to arise out of frustration with her inability to stop rulings that she perceives to be adverse to her and to her view of Virginia's interests. Elizabeth's view of this case is one of original sin. She strongly believes that the 2016 guardianship decision was wrongly decided and that the probate division's choices that have continued the guardianship and have denied her the role of guardian have been in error. She is zealous in the belief that the subsequent actions of the parties have been an on-going, collusive effort to both shore up this original error and perpetuate it.

---

[6] Around this same time, Virginia's court appointed attorney, John Page, sought and was granted leave to withdraw as counsel. In April 2023, Paula McCann entered her notice as an attorney for Virginia. David Black was appointed as a temporary financial guardian and a new Guardian ad Litem was also appointed.

[7] By way of example, Judge Bent observed in his December 28, 2021 Order:

> Elizabeth has been and remains the primary caretaker to her mother. Unfortunately, she sees the actions of her siblings in instituting the guardianship over her mother as highly malevolent. Elizabeth displays to others who she regards as threats a substantial degree of hostility and anger and has made the provision of services to Virginia by those who Elizabeth is hostile to very difficult. She wields substantial power within the family circle and has engaged in litigation over a number of issues.

*Black v. Black*, Dckt. No. 164-4-20 Wncv, at 3 (Dec. 28, 2021).

This version of events may be crystal clear to Elizabeth, and it may be galling to her to continue to suffer these decisions, but the evidence and record before the Court does not make the case that she believes she has. Importantly, many of these issues have been adjudicated and have reached a point of finality. For example, the Vermont Supreme Court in its April 7, 2023 decision has affirmed the probate court's decision to continue a guardianship for Virginia and its decision not to appoint Elizabeth as guardian. *In re Guardianship of Black*, 2023 WL 2866215, at * 2 (Apr. 7, 2023) (unpub. mem.).

The Court and the parties have gone through several rounds of discovery in this appeal. Given that Rule 72 does not speak to discovery, these efforts have largely been a discretionary effort by the civil division to give Elizabeth some ability to put substance to her claims. Since the start of the appeal, Elizabeth has been engaged in various discovery efforts. A number of these efforts have focused on trying to get information from the various attorneys that have represented various parties. For example, she has sought interrogatories and requests to produce from Deborah Black's attorney, Andrea Gallitano. She has sought information from Attorney McCann, and she has sought information and statements from Attorney Page. Elizabeth has filed interrogatories with Ms. Buckholz.[8] These efforts have yielded some results, but they have received objections and redactions, and they have not yielded the type of admissions that Elizabeth imagines are out there.[9] Therefore, Elizabeth seeks more discovery. The Court **denies** these requests as Elizabeth made her requests, for the first time, on the day of the pre-trial

---

[8] The Court did not allow discovery against Attorney Page, Attorney Gallitano, or Attorney McCann. Elizabeth served interrogatories on Ms. Buckholz, but as a non-party, she is not obligated to reply to such requests without a subpoena and to the Court's understanding she has not volunteered.

[9] Elizabeth has made a tautological argument that the redactions she has been given show that the parties have something to hide because why would they redact, unless they had something to hide. The rules of discovery, however, allow parties to redact privileged information in discovery, and the mere presence of an objection or redaction is not proof that the party is hiding something illicit. The redacted information may go against the party's interest, but it may also be innocuous. The fact that a party may produce some information but withhold other information through objections or redactions does not establish the import of the withheld information one way or the other. It is through a Rule 26(h) conference and subsequent, timely motions to compel/protect that the basis for the withholding is examined and determined as either valid or invalid. If it is the former, then the information is rightfully withheld without negative implications. If it is the latter, then the information must be shared, or a negative inference may be drawn. At this point, Elizabeth has not established this basis and has not engaged in the necessary narrowing and clarifying process that would allow the Court to determine whether the opposing parties' objections and redactions were proper or improper.

conference and did not follow the necessary steps under V.R.C.P. 26(h), which requires parties to have a telephone or in-person conference prior to filing a motion to compel. As such, the Court finds that the reasonable and proportionate time for discovery has ended. *Castle v. Sherburne Corp.*, 141 Vt. 157, 164 (1982) (holding that discovery rulings are "necessarily entrusted to the trial court's broad discretion"). After two years, the matter must proceed to final determination.

## Lack of Dispute Over Attorney Buckholz's Fees

The problem that has emerged in the Court's recent pre-trial conference is that Elizabeth's entire purpose for this appeal does not arise from Ms. Buckholz's actual billings. At the May 18, 2026 pre-trial conference, Elizabeth admitted, for the first time, that she does not contest that Ms. Buckholz did the work that she purports to have done and does not contest that the billings are accurate. In other words, Elizabeth does not dispute that Ms. Buckholz's records are accurate and reasonable representations of the work she did. Instead, Elizabeth clarified, she seeks to contest Ms. Buckholz's basis for doing the work that she did. This contest appears to come in two forms. The first is a challenge to the information that Ms. Buckholz received. Elizabeth believes that other parties fed Ms. Buckholz false information about Elizabeth and about Viriginia, and that Ms. Buckholz acted on this "bad information." The other basis appears to be a challenge to how Ms. Buckholz performed her tasks. By way of example, Elizabeth pointed to a choice that Ms. Buckholz made regarding an electrician that was installing security services to Virginia's house. Elizabeth felt that Ms. Buckholz handled the interaction badly, and that as a result Virginia incurred additional expenses.

Elizabeth's objections to Ms. Buckholz's billing have very little to do with Ms. Buckholz's actual billing, and it appears to be the more generalized objections that relate back to Elizabeth's deeper objections to the guardianship. In this respect, the Court finds that there is no basis to go forward with this appeal. Elizabeth has admitted that the billing records are accurate and consistent with the work Ms. Buckholz reports to have done. Instead, Elizabeth's objections go to the nature of how Ms. Buckholz performed her duties or what information she relied upon in the decision-making process. Such objections go beyond the scope of this limited appeal into

6

the accuracy and reasonableness of the billings. These objections go into the deeper nature of both Ms. Buckholz's choices and the underlying guardianship framework.

As with her previous appeal against Ms. Buckholz's earlier billings, Elizabeth's objections, as clarified by her May 18th statements, indicate that her appeal lies closer to a claim of malfeasance, than a review of billings. In other words, the question is not whether a particular billing corresponds to actions that Ms. Buckholz took in her capacity as guardian or whether those actions were reasonably billed, but rather an examination of whether Ms. Buckholz was making choices and working in Virginia's best interests, which Elizabeth defines as being consistent with her view of what she believes are Virginia's best interests.

While the Court has general supervisory authority over a guardian, this authority does not extend into a license for interested parties to second-guess the actions of a guardian. Accuracy and reasonableness are the watchwords in this process and efforts to rope this review into a larger conceptual attack on the entire guardianship is both inconsistent with the scope of the appeal and the purpose of such review. Elizabeth has not set out any specific objections to a particular billing or any basis to object to Ms. Buckholz's billing. Instead, she has, as she admitted at the May 18th hearing, used this process in an effort to try to unearth evidence of her deeper theory surrounding her mother's guardianship. That is beyond the scope of what the Court is obligated to review. With Elizabeth's May 18th admissions, there remains nothing to review in this appeal. There is no contest that Ms. Buckholz billed for what she did, and Elizabeth has not appealed or contested the rate and nature of Ms. Buckholz's billing.

The Court has taken the additional step in this case of reviewing Ms. Buckholz's billings and exhibits as well as reviewing the probate court record for her guardianship. The Court finds that there are no inconsistencies or irregularities in these filings. See *L'Esperance v. Benware*, 2003 VT 43, ¶¶ 21, 22. They are consistent with the record, and as Elizabeth admits they correspond to work that Ms. Buckholz performed. The Court finds that there is no dispute that they are accurate and reasonable.

Based on this lack of dispute, the Court hereby **affirms** the probate Court's June 6, 2023 award of fees to Ms. Buckholz, and the present appeal is **Dismissed**.

Finally, the Court will note that Elizabeth recently filed a motion to appeal the probate division's April 7, 2026 decision. This filing exceeds the scope of the current appeal, and it must be filed as a separate appeal in a new docket. At the May 18, 2026 hearing, however, there was some indication that the April 7th order may not be a final decision due to a pending motion that Elizabeth filed on April 28, 2026 to reconsider. The parties are advised that such considerations are important as to whether this Court can take jurisdiction of an appellate issue. If there is a pending motion to reconsider, then appeal is premature. For these reasons, the motion to amend and to appeal in this docket filed on May 8, 2026 is **Denied.**

Electronically signed on 5/21/2026 4:39 PM pursuant to V.R.E.F. 9(d)

_____

Daniel P. Richardson
Superior Court Judge